UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 08-CV-0746 (JFB)(AKT)

———————

DARWIN PALACIOS,

Plaintiff,

VERSUS

ARIS, INC., MICHAEL BURSZTYN, MEIR AZIREL A/K/A/ MEIR AZRIEL, &
ANA L. HERNANDEZ,

Defendants.

———————

**MEMORANDUM AND ORDER**
March 11, 2010

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff Darwin Palacios (hereinafter "plaintiff" or "Palacios") brings this action against Aris, Inc. (hereinafter "Aris"), Michael Bursztyn (hereinafter "Bursztyn"), Meir Azriel (hereinafter "Azriel"), and Ana L. Hernandez (hereinafter "Hernandez"), seeking relief for personal injuries arising from a car accident between Azriel and Hernandez, during which plaintiff, a pedestrian, was struck by one of the colliding vehicles.

Presently before the Court is a motion by defendants Aris, Bursztyn, and Azriel (collectively "moving defendants") for summary judgment. Specifically, the moving defendants argue that the Graves Amendment, 49 U.S.C. § 30106, bars plaintiff's claim that Aris, the company that rented the car driven by Azriel to him, is vicariously liable for any negligence on the part of the driver of its rented vehicle. Moving defendants also argue that plaintiff has made no showing of negligence by defendants Bursztyn or Azriel and, thus, the claims against them fail as a matter of law.

For the reasons that follow, the Court denies moving defendants' motion for summary judgment in its entirety. In particular, with respect to Aris's reliance on the Graves Amendment, plaintiff has presented evidence that Azriel, when renting the car from Aris, presented a document purporting to be an Israeli driver's license that was in Hebrew and contained no photograph. No other identification was presented.

Moreover, there is a factual dispute as to whether the Israeli license presented by Azriel was valid. The Court recognizes there is no duty under New York law for rental car companies, once they determine that the lessee has a facially valid driver's license, to conduct an investigation of the renter, including his or her driving history. However, after reviewing the record in the light most favorable to plaintiff, the Court concludes that plaintiff has raised genuine issues of material fact as to whether the license was valid, whether Aris was negligent in failing to determine whether the purported Isareli license was valid on its face, and whether, given the lack of a photograph, the license presented belonged to the person who was seeking to rent the vehicle. Thus, under the particular circumstances of this case, summary judgment under the Graves Amendment is unwarranted. Similarly, there are issues of material fact as to whether Bursztyn was negligent in facilitating Azriel's rental of the vehicle and whether Azriel was negligent in operating the vehicle that eventually hit plaintiff, such that summary judgment on the negligence claims against Azriel and Bursztyn also must be denied. Thus, moving defendants' motion for summary judgment is denied in its entirety.

Also presently before the Court is a motion by plaintiff to strike moving defendants' answer to the complaint, based on alleged failures to comply with discovery requests and alleged misrepresentations to the Court concerning the whereabouts of Azriel. Plaintiff's motion to strike is denied.

I. BACKGROUND

A. Facts

The following facts are taken from the parties' depositions, declarations, exhibits and respective Local 56.1 statements of facts.[1] Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

Plaintiff Darwin Palacios is a citizen of El Salvador. Aris, Inc. (a/k/a Aris Car Rental) is a corporation organized under the laws of New Jersey that rents vehicles to the public.

---

[1] Plaintiff Palacios and co-defendant Hernandez argue, as a threshold matter, that the moving defendants' motion should be denied for failure to comply with Local Rule 56.1. The Court notes that, although the moving defendants did not initially file a Rule 56.1 statement, they did rectify that error when it was raised in the opposition papers. In any event, the moving papers cited to the record and clearly identified the factual basis in the record for the moving defendants' position. Therefore, there was no resulting prejudice to plaintiff or co-defendant Hernandez from the initial failure to supply the Rule 56.1 statement. Accordingly, in its discretion, the Court rejects the argument that the motion should be denied on this procedural ground, and, instead, the Court has fully considered the motion on the merits. *See, e.g., Gilani v. GNOC Corp.*, No. 04 Civ. 2935(ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Similarly, to the extent that plaintiff suggests that the motion should be denied due to moving defendants' failure to supply certain discovery and due to alleged misrepresentations to the Court, the Court rejects that argument because plaintiff has not shown that the moving defendants have failed to respond in good faith to plaintiff's discovery requests, nor have they shown that the moving defendants have made any misrepresentations to the Court regarding Mr. Azriel's whereabouts.

(Pl.'s 56.1 ¶ 1.)[2] Aris is owned and operated by Mayer Franken. (Franken Dep. 5:11-12, 5:25-6:3, 7:24-8:4.) Defendants Bursztyn, Azriel, and Hernandez are U.S. citizens who are residents of New York. (Compl. ¶¶ 9-11.) Aris was the owner and registrant of a 2007 Toyota motor vehicle bearing New Jersey license plate number UBR74U.

On or about November 4, 2007, a mutual friend introduced Bursztyn to Azriel to enable Azriel to rent a car. (Bursztyn Dep. at 7.) Azriel asked Bursztyn to help him rent a car because Azriel did not have a credit card with insurance and thus lacked the ability to rent a car by himself. (Pl.'s 56.1 ¶ 13.) On that date, Bursztyn and Azriel went to Aris in order to rent a vehicle for Azriel. Franken was working at Aris that day, and he rented a 2007 Toyota Camry to defendants Bursztyn and Azriel. (*See id.* ¶ 2.) Bursztyn's license was on file at Aris from prior arrangements, so he was not required to present a license at the time of rental. (Franken Dep. at 16:12-22.) When Franken rented the car to Bursztyn, Bursztyn informed Franken that Azriel would be driving the vehicle. (Franken Dep. at 16:5-11.) Because he would be driving the vehicle, Azriel provided Franken with a paper that is asserted by the moving defendants to have been an Israeli driver's license. (Franken Dep. at 18:14-19:9; Moving Defs.' 56.1 ¶ 2.) Upon being shown that document, Franken rented the vehicle to Bursztyn and Azriel. Azriel left with the Camry, but Bursztyn departed separately.

Later that same day, at about 5:20 p.m., while Azriel was driving the Toyota Camry, there was a collision between the vehicle driven by Azriel and another vehicle, a 2006 Nissan Pathfinder, driven by defendant Ana Hernandez. Azriel had been driving northbound on Middle Neck Road at the time of the accident. (Azriel Dep. at 16.)[3] The details of the accident are largely disputed. (*Compare* Pl.'s 56.1 ¶¶ 14-18 and

---

[2] Where only one party's 56.1 statement, affidavit, or deposition is cited, the fact is not contested by the other party or the other party has offered no evidence to controvert that fact. Because defendants Aris, Bursztyn, and Azriel submitted a joint motion and Rule 56.1 statement, for ease of reference, their 56.1 statement will be referred to as "Moving Defendants' 56.1."

[3] The Court notes plaintiff's objection to the use of the unsigned deposition transcript of Meir Azriel in determination of this motion for summary judgment. However, plaintiff's counsel was present at Azriel's deposition and had the opportunity to cross-examine Azriel. Furthermore, because the Court finds that there remain material disputed issues of fact even when the transcript is considered, plaintiff is not prejudiced by the use of the transcript for purposes of this motion for summary judgment. Accordingly, the Court may appropriately consider the transcript for its purposes here. *See, e.g., Torres v. Do It Best Corp.*, No. 07-CV-230 (CS)(LMS), 2008 WL 4974588, at *4 n.3 (S.D.N.Y. Nov. 24, 2008) (citing 8 Fed. Proc. Forms § 23:113 ("[T]he absence of prompt certification of a deposition under Fed. R. Civ. P. Rule 30(f) does not prevent the admission of a deposition where the adverse party has seen the deposition prior to trial, has a transcript of the deposition, and is fully aware of its contents.")); *see also Yates v. Philip Morris Inc.*, No. 85 Civ. 3402 (CSH), 1987 WL 14920, at *2 n.5 (S.D.N.Y. July 20, 1987) ("Plaintiff has cross-moved to suppress the use of these unsigned deposition transcripts because they do not comply with Fed. R. Civ. P. 30. Because I conclude that material facts appear to be genuinely disputed even taking into consideration the unsigned depositions, I deny this motion."). The Court reserves decision as to whether such transcript would be admissible at trial.

Hernandez's 56.1 ¶¶ 2-3 *with* Moving Defs.' 56.1 ¶¶ 14-20.) The Court determines the core undisputed facts to be as follows: When Azriel first saw defendant Hernandez's vehicle, it was stopped four or five car lengths away in the intersection. (Pl.'s 56.1 ¶ 14; Hernandez's 56.1 ¶ 2.) According to Hernandez, she was stopped because an illegally parked white van had obstructed her view to her left, and she thus was proceeding at a "very slow rate of speed." (Hernandez's 56.1 ¶ 3.) Instead of stopping his vehicle, Azriel sped up to go around Hernandez's vehicle on the left. (Moving Defs.' 56.1 ¶¶ 14-20; Pl.'s 56.1 ¶ 14; Hernandez's 56.1 ¶ 2.) While Azriel was doing so, the cars collided.

After the cars collided, the Toyota Camry driven by Azriel struck a pedestrian, plaintiff Palacios. (Pl.'s 56.1 ¶ 19.) Palacios had been walking southbound on the sidewalk of Middle Neck Road at that time. (*Id.*) Palacios testified that he heard the sound of screeching brakes one second before the contact occurred between the two vehicles. (Palacios Dep. at 60-80.) The impact of the collision caused one of the cars to land on the sidewalk on top of Palacios. (*Id.*)

On November 4, 2007, after the accident, Azriel was issued an accusatory instrument by a Nassau County Police Officer for being an "unlicensed operator." (Pl.'s 56.1 ¶ 9.) This instrument required Azriel to appear in Great Neck Village Court on January 2, 2008 to answer the charge against him. (*Id.*) Azriel did not appear in court to do so. (*Id.*) On June 16, 2008, the New York State Department of Motor Vehicles suspended Azriel's privilege to operate a motor vehicle in New York State for his failure to appear in court on January 2, 2008. (*Id.* ¶ 10.) On October 21, 2009, Azriel appeared in Great Neck Village Court to answer the "unlicensed operator" charge against him; Azriel pled guilty to the charge. (*Id.* ¶ 11.) Plaintiff asserts that as of November 4, 2007, the date of the accident, Azriel's privilege to operate a motor vehicle in New York State had been suspended six times on five different dates. (*Id.* ¶ 7 (citing Pl.'s Ex. C).)

B. The Instant Action

Plaintiff filed the instant complaint based on the Court's jurisdiction under 28 U.S.C. § 1332, alleging that defendants' negligence caused his personal injuries as a result of the accident on November 4. Palacios alleges that he sustained serious injuries and economic losses as a result of defendants' negligence. Defendants Aris, Bursztyn, and Azriel cross-claimed against defendant Hernandez. They contend that they are entitled to full indemnification or contribution from defendant Hernandez, due to her active or primary wrongdoing and negligence. Defendant Hernandez cross-claims on similar grounds against defendants Aris, Bursztyn, and Azriel, contending that the accident was the result of her codefendants' negligence, and that she is therefore entitled to either apportionment or indemnification.

Since the filing of the complaint, there has been controversy regarding the whereabouts of Azriel. In the spring of 2009, defendants requested an extension of discovery because they were unable to locate Azriel. (*See* Pl.'s Letter to the Court, Dec. 9, 2009.) Defense counsel concluded that Azriel had left the country and returned to Israel. (*Id.*) However, according to plaintiff, on November 5, 2009, plaintiff's counsel faxed a letter to Aris's counsel, advising her that Azriel was still in the country, living and working in Brooklyn, at Yeshiva School, and that Azriel personally appeared on October 21, 2009 at

the Village Court of Great Neck to answer the ticket he was issued on November 4, 2007. (*Id.*) Plaintiff's counsel contends that it confirmed Azriel's employment at the school with Rabbi Shichtman, another employee at Yeshiva. (Pl.'s Letter to the Court, Dec. 10, 2009.)

In reply, moving defendants' counsel contends that it has made numerous attempts to contact Azriel, but they have been unsuccessful. (Moving Defs.' Letter to the Court, Dec. 10, 2009.) Moving defendants' counsel also contends that it investigated the address at which plaintiff's counsel alleged Azriel was residing, as well as the school where plaintiff alleged that Azriel was currently employed. (*Id.*) Moving defendants' counsel informed the Court that Rabbi Belsky, who worked at the school, claimed that he had never heard of Azriel. Rabbi Belsky also informed counsel that Azriel was not employed by the school. (*Id.*) Moving defendants' counsel did confirm, however, that Azriel had appeared at Great Neck Village Court on October 21, 2009. (*Id.*) Nonetheless, moving defendants' counsel stated that it was still unable to locate Azriel. (*Id.*)

Plaintiff's counsel replied by letter to the Court, stating that, although it had confirmed Azriel's employment at the Yeshiva School with Rabbi Shichtman, a week later, when counsel spoke to Rabbi Belsky, Rabbi Belsky denied knowledge of Azriel, and denied that Azriel had been employed at the school. Plaintiff's counsel thereafter alleges that it attempted to serve Rabbi Belsky and Rabbi Shichtman with subpoenas to testify regarding the whereabouts of Azriel (*id.*), but when counsel's private investigator arrived at the school to serve them, he was told that Rabbi Belsky and Rabbi Shichtman no longer lived or worked at Yeshiva. (*Id.*)

C. Procedural History

Plaintiff commenced the instant action on February 22, 2008. Defendants Aris, Bursztyn, and Azriel answered on March 25, 2008, and asserted a cross-claim against defendant Hernandez. Defendant Hernandez filed her answer on April 24, 2008 and cross-claimed against Aris, Bursztyn, and Azriel. On September 28, 2009, defendants Aris, Bursztyn, and Azriel moved for summary judgment. On November 30, 2009, plaintiff and codefendant Hernandez filed their opposition papers. On January 14, 2010, moving defendants filed their reply. Oral argument was heard on March 8, 2010. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113,

5

122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

As set forth below, the Court concludes that the moving defendants are not entitled to summary judgment on any of their claims. In considering the parties' arguments, the Court, in exercising its diversity jurisdiction, must "apply the substantive law of the state to which the forum state, New York, would have turned had the suit been filed in state court." *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 280 (2d Cir. 1981) (citations omitted). All parties agree that New York law applies to the instant case.

### A. Graves Amendment

First, the moving defendants argue that the Graves Amendment preempts all state statutory and common law to prevent the vicarious liability of businesses that rent or lease motor vehicles for the negligence of the drivers to whom they rent or lease vehicles. In opposition, plaintiff contends that defendant Aris is nonetheless liable in this instance because Aris was negligent in renting an automobile to Azriel without first investigating his driving record. The Court concludes that plaintiff and defendant Hernandez have set forth sufficient evidence to create a genuine issue of material fact as to whether Aris was negligent when it leased the vehicle to Azriel based upon the purported Israeli license, in Hebrew and without a photograph, that was presented at the time of rental. Thus, summary judgment on the Graves Amendment issue is denied.

New York law imposes joint and several liability on an owner of a vehicle for damages arising from negligent operation of that vehicle. The relevant statute provides:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from

negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.

N.Y. Veh. & Traf. Law § 388. New York law provides that an "owner" of a vehicle is

[a] person, other than a lien holder, having the property in or title to a vehicle or vessel. The term includes a person entitled to the use and possession of a vehicle or vessel subject to a security interest in another person and also includes any lessee or bailee of a motor vehicle or vessel having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days.

N.Y. Veh. & Traf. Law § 128. This definition includes, and thereby subjects to liability, a rental company that is the registered owner of a vehicle. *See Morris v. Snappy Car Rental, Inc.*, 637 N.E.2d 253, 255 (N.Y. 1994).

On August 10, 2005, Congress implemented the Safe, Accountable, Flexible, Efficient Transportation Equity Act, which was a comprehensive transportation bill that included the Graves Amendment. The section entitled "Rented or Leased Motor Vehicle Safety and Responsibility" states, in relevant part:

(a) An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if–

(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and

(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a). The Graves Amendment applies to all actions commenced on or after August 10, 2005, without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before that date. 49 U.S.C. § 30106(c). This action was filed by plaintiff on February 22, 2008 and is indisputably governed by the federal statute.

The express language of the Graves Amendment preempts Section 388 via the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, as long as there is no negligence or criminal wrongdoing on the part of the owner. *See, e.g.*, *Luperon v. N. Jersey Truck Ctr., Inc.*, No. 07 Civ. 9630(HB), 2009 WL 1726340, at *5 (S.D.N.Y. June 19, 2009) ("[T]he Graves Amendment has been applied to exempt defendants from liability where they are characterized as a company that 'owned the rental car and leased it to [the driver],' [and] where the lessor is described as a 'business that rents or leases' [vehicles]." (collecting cases)); *Graham v. Dunkley*, 852 N.Y.S.2d 169, 173 (App. Div. 2008) (same); *see also Flagler v. Budget Rent A Car Sys., Inc.*, 538 F. Supp. 2d 557, 558 (E.D.N.Y. 2008) ("There is no question but that the

Graves Amendment preempts state laws that impose vicarious liability on businesses that rent or lease motor vehicles."). Thus, the Graves Amendment will prevent a vehicle renter's liability, unless that renter was negligent or engaged in criminal wrongdoing. *See, e.g.*, *Novovic v. Greyhound Lines, Inc.*, No. CV-08-3190 (CPS), 2008 WL 5000228, at *3 (E.D.N.Y. Nov. 19, 2008) ("Plaintiffs, however, allege that the injuries suffered by [the victim] were due in whole or in part to the negligence of defendant MCI in the maintenance of the Greyhound bus. This claim renders the Graves Amendment inapplicable.").

Plaintiff contends that Azriel did not produce a valid Israeli driver's license to Franken on November 4, 2007 when he rented the vehicle. Plaintiff further asserts that defendant Aris did nothing to determine if the license that Azriel presented to it on November 4, 2007 was a valid license.[4] (Pl.'s Opp. at 4 (citing Franken Dep. at 19).) Thus, plaintiff argues that defendant Aris was negligent because it failed in its duty to not rent a vehicle to an individual who did not have a valid driver's license or did not have the privilege to drive in New York State under Vehicle & Traffic Law § 250. In response, the moving defendants assert that Azriel presented a facially valid Israeli driver's license to Aris at the time of the rental and, thus, the Graves Amendment should preclude any claim against it. As set forth below, the Court concludes that genuine issues of material fact in dispute in the record preclude summary judgment on the negligence claim in favor of Aris under the Graves Amendment; rather, these issues, regarding whether the exceptions to the Graves Amendment apply, need to be resolved by a jury at trial in this particular case.

Any person holding a foreign driver's license may operate a motor vehicle in New York without obtaining a New York State license. N.Y. Veh. & Traf. Law § 250[2] ("A person of the age of sixteen years and upwards who shall be a nonresident of this state, and a resident of a state, territory, federal district or foreign country having laws, with which such person has complied, which require such person, in order to operate a motor vehicle or motorcycle therein, to be licensed, may operate or drive a motor vehicle or motorcycle on the public highways of this state without being so licensed under this chapter . . . ."); *see also* N.Y. Veh. & Traf. Law § 502[5][a][I] ("Upon successful completion of the requirements set forth in subdivision four of this section, and upon payment of the fee prescribed by law, the commissioner shall issue an appropriate license to the applicant, except that the commissioner may refuse to issue such license (I) if the applicant is the holder of a currently valid or renewable license to drive issued by another state or foreign country unless the applicant surrenders such license."); *Cubas v. Martinez*, 819 N.Y.S.2d 10, 22 (App. Div. 2006) ("Any person holding a foreign driver's license may operate a motor vehicle without obtaining a New York State license . . . ."). Similarly, in New Jersey, any person with a

---

[4] In support of its claim, plaintiff argues that Azriel received a ticket for being an "unlicensed operator" on November 4, 2007, the date of the car rental and accident. Plaintiff has put forward evidence of Azriel's guilty plea to his being an "unlicensed operator" at the time of the accident. (Pl.'s Ex. D.) Plaintiff contends that this is proof that defendant Aris did not verify whether Azriel had a valid driver's license on November 4, 2007. (*See* Pl.'s Ex. C.) Plaintiff further contends that Azriel, to date, has not produced Azriel's Israeli driver's license to plaintiff. (Pl.'s Opp. at 6.)

8

valid state or foreign country's driver's license may operate a vehicle. *See* 5T133-7-14, N.J.S. 39:3-17.

Although foreign drivers may operate vehicles in the United States, "[a]n entity can be held liable for knowingly allowing an unlicensed driver to operate a vehicle." *Pacho v. Enterprise Rent-A-Car Co.*, 572 F. Supp. 2d 341, 352 (S.D.N.Y. 2008). Thus, even though the Graves Amendment may allow a rental car company to escape vicarious liability for another's negligence, by the Graves Amendment's very terms, the rental car company will still be liable if the company itself is negligent. Accordingly, a rental company may be liable if it allows an unlicensed driver, or a driver without a valid license, to operate a vehicle. Although this obviously requires that rental car companies assess the facial validity of a driver's license before renting to that driver or otherwise allowing that driver to operate a vehicle, this duty does not require the company to investigate a renter's driving record where that renter has presented a valid driver's license. *See, e.g.*, *Sigaron v. Elrac, Inc.*, No. 350273-2008, 2008 WL 5381494, at \*6 (N.Y. Sup. Ct. Dec. 23, 2008) (finding failure to state a cause of action when "[p]laintiffs failed to cite any legal authority that ELRAC was under an obligation to check Fernandez's driver's record beyond verifying that he had a valid driver's license"); *Vedder v. Cox*, No. 19367/06, 2008 WL 595857, at \*1-2, 4 (N.Y. Sup. Ct. Feb. 15, 2008) (finding no evidence or legal basis from which to conclude that rental company had a duty to investigate the driving record of a defendant who had a "history of suspended driving privileges," particularly without proof that the company rented the vehicle to the defendant "during a time that his driving privileges were suspended"); *accord Barksdale v. Nat'l Bank of Detroit*, 463 N.W.2d 258, 260-61 (Mich. App. 1990); *Osborn v. Hertz Corp.*, 205 Cal. App. 3d 703, 710 (Cal. App. 1988). However, if Aris was negligent in failing to exercise reasonable care to determine that the license was facially valid and belonged to Azriel, then the Graves Amendment would not protect Aris from liability.[5]

---

[5] At least one New York court also has suggested that, although rental car companies have no independent duty to investigate, a company's failure to comply with its own internal policies and procedures regarding verification that a person has a valid license could support a negligence claim. *See, e.g.*, *Estate of Byrne v. Collins*, No. 38029/06, 2009 WL 4110872, at \*5 (N.Y. Sup. Ct. 2009) ("[T]he Court finds that triable issues of material fact remain regarding whether Perfect possessed special knowledge of any propensity by Collins to operate the subject truck in an unreasonably dangerous way. Specifically, the moving defendants have not tendered any evidence establishing that Perfect followed the proper policies and procedures required of Budget rental locations before renting vehicles to drivers. Nor does the moving defendants' reply address their failure to produce such documents. Although we decline to impose upon motor vehicle rental agents any obligation to check a renter's driving record beyond verifying that he or she has a valid driver's license, absent further evidence of the unsuitability of the renter and the agent's knowledge thereof, we need also conclude that such precautions are not part of Budget's internal policies and procedures before granting summary judgment to the moving defendants."). Here, there is nothing in the record regarding any internal policies and procedures in existence at Aris relating to verification of the validity of a driver's license that is presented at the time of rental. Thus, the Court declines to address this issue, including the above-referenced case, at this time. However, as noted above, the Court concludes that summary judgment on the negligence claim is unwarranted, regardless of whether or not Aris had any such policies or procedures in place that were

The moving defendants argue that Azriel did present a valid driver's license to Aris on November 4, 2007 – namely, his temporary Israeli license. In support of that contention, the moving defendants attach a copy of that license as Exhibit H. However, even assuming that Azriel presented the license in Exhibit H to Franken at Aris on November 4, 2007, there is a material disputed issue of fact as to whether Franken, an employee of defendant Aris, was negligent in determining the validity of the Israeli license.

At his deposition, Franken testified regarding Azriel's license as follows:

> Q: When you met him for the first time and you got his license, did you do anything to determine whether he had a valid license?
>
> A: Well, I looked at the license, I see when does it expire.
>
> Q: That's all you do?
>
> A: That's all I do.
>
> Q: Did Mr. [Azriel] provide you – what type of license did he provide you with?
>
> A: He has an Israeli license from the State of Israel.
>
> Q: Is it your understanding that a person that has an Israeli license can drive in the United States?
>
> A: Yes.

(Franken Dep. 18:17-19:7.)

There are a number of facts surrounding the presentation of the Israel license by Azriel that preclude summary judgment on the issue of whether Aris was negligent in concluding that Aris had a facially valid license. First, the Court notes that the license in Exhibit H is in Hebrew. Although Franken has submitted an affidavit informing the Court what the writing on the license says, the affidavit fails to assert Franken's basis for this knowledge. Nor does Franken assert that he was able to read the contents of the writing on the license at the time it was presented to him by Azriel on November 4, 2007.[6] Second, even if Franken understood Hebrew, it is entirely unclear from the record what his basis was for concluding that it was a valid Israeli license. Plaintiff has submitted Exhibit B as an example of a valid Israeli driver's license, and noted its dissimilarity to Exhibit H. Although the moving defendants contend that the license submitted by Azriel on November 4, 2007 was a valid temporary license, Franken has not testified that he was familiar with these types of temporary Israeli licenses and therefore was able to assess its validity. Finally, the purported license (submitted as Exhibit H) has no photograph and there is no evidence in the record that Azriel presented separate identification with a photo (such as a passport) to Franken at the time Azriel presented the purported license. Construing all the evidence most favorably to plaintiff,

---

disregarded on that day, based upon disputed factual issues regarding the facial validity of any license presented by Azriel.

[6] At oral argument, counsel for the moving defendants asserted that the affidavit from Franken states he is fluent in Hebrew. The affidavit contains no such representation. In any event, even if Franken is fluent in Hebrew, summary judgment is unwarranted for the other reasons stated herein.

10

the issue of whether Aris was negligent in renting the vehicle to Azriel based upon the presentation of this purported foreign license cannot be resolved on summary judgment in this case.[7]

In sum, having carefully reviewed the record in the light most favorable to plaintiff, the Court is unable to conclude as a matter of law that defendant Aris was not negligent when it rented a vehicle to Bursztyn and Azriel under the particular circumstances of this case. *See, e.g., Pacho*, 572 F. Supp. 2d at 352 (finding a material disputed issue of fact existed as to whether vehicle renter was negligent when the driver testified that the renter "never asked him to present identification or a driver's license," and the renter asserted that he had presented one, but the renter failed to produce a copy of that license). Instead, there are disputed factual issues relating to this claim that must be resolved by a jury. Accordingly, summary judgment based upon the Graves Amendment is denied.

B. Negligence Claims Against Bursztyn

The moving defendants next claim that the plaintiff's claims against Michael Bursztyn must be dismissed because he did not owe a duty to the plaintiff. Specifically, Bursztyn argues that he only assisted Azriel in renting the car, and in doing so, he informed defendant Aris that Azriel would be driving the car. As set forth below, the Court concludes that there exist genuine issues of disputed fact that preclude summary judgment on the issue of whether Bursztyn acted negligently by facilitating Azriel's rental of the vehicle.

A party that does not own a vehicle can be held liable for negligent entrustment if that party "had control" over the vehicle and was negligent in entrusting it to one whom he knew, or in the exercise of ordinary care should have known, was incompetent to operate it. *Pacho*, 572 F. Supp. 2d at 353; *Bennett v. Geblein*, 421 N.Y.S.2d 487, 488-89 (App. Div. 1979); *Good v. MacDonell*, 564 N.Y.S.2d 949, 952 (Sup. Ct. 1990). Generally, to establish liability under this theory, a plaintiff must demonstrate that "the defendant . . . [has or should have] some special knowledge concerning a characteristic or condition peculiar to the [person to whom a particular chattel is given] which renders [that person's] use of the chattel unreasonably dangerous . . . ." *Cook v. Shapiro*, 871 N.Y.S.2d 714, 666 (App. Div. 2009) (quoting *Zara v. Perzan*, 586 N.Y.S.2d 139, 139 (App. Div. 1992)) (alteration in original).

---

[7] Plaintiff also asserts several other theories of negligence by Aris in opposition to the summary judgment motion. For example, plaintiff suggests that Azriel's license may have been suspended at the time of the rental and Aris should have been aware of such suspension. Similarly, plaintiff contends that Azriel may have been in non-compliance with Section 250 because he was a resident of New York State for more than 120 days without getting a New York State license, and Aris could have discovered such non-compliance. As a threshold matter, as discussed *supra*, the Court notes that it is aware of no case authority under New York law which suggests that, if it is determined that the renter has a facially valid license, rental companies have a duty to investigate the renter's driving record or residency history to ensure compliance with the New York Vehicle & Traffic Law. In any event, the Court need not address these alternative theories of negligence at this time because the Court has already found that summary judgment under the Graves Amendment is unwarranted because of the disputed issues regarding whether Aris should have questioned the facial validity of the purported Israeli license at the time of rental under the circumstances of this case.

11

Defendant Bursztyn rented the vehicle that Azriel was driving on November 4, 2007, in order that Azriel could use the car. Azriel did not have credit and, thus, would have been unable to rent the car without Bursztyn's assistance. Accordingly, Bursztyn had "control" over the vehicle, and entrusted it to Azriel. *See Bennett*, 421 N.Y.S.2d at 489 (holding that a husband who had permission to use his wife's truck could be liable under a negligent entrustment theory for allowing a friend to drive the vehicle while intoxicated); *Faller v. A. Drive Auto Leasing Sys.*, 363 N.Y.S.2d 602, 603-04 (court reinstated jury verdict finding liability for leasing company, father who owned vehicle, and the son to whom he loaned the vehicle, because the son had his father's permission to drive the auto and the son permitted his intoxicated companion to drive the vehicle; court concluded that this was as much a cause of the accident as the driver's negligence); *cf. Dowler v. Johnson*, 121 N.E. 487, 487-88 (N.Y. 1918) (concluding that a fire commissioner could be responsible for negligent driving of one of his firemen where the commissioner was present and permitted the fireman to drive recklessly).

The crucial issue is thus whether Bursztyn knew, or in the exercise of ordinary care should have known, that he was entrusting the vehicle he rented to someone who was incompetent to operate it. Foreign drivers are permitted to operate vehicles in New York, N.Y. Veh. & Traf. Law § 250; thus the fact that Azriel had an Israeli driver's license should not have indicated to Bursztyn that Azriel would operate the vehicle negligently. However, there remains a material disputed issue of fact regarding whether Bursztyn, like Aris, should have been concerned whether Azriel possessed a facially valid Israeli driver's license. Bursztyn had just met Azriel that same day on which he assisted Azriel in renting the vehicle:

> Q: Did you know a person by the name of Meir [Azriel]?
>
> A: Well, when you say did I know him, do I know him from before then or – I didn't know him before then, no.
>
> Q: How did you first meet him?
>
> A: Through a mutual friend.
>
> Q: Who['s] that friend?
>
> A: I'm not even sure who that person that introduced me to him, but there was somebody between.
>
> Q: Do you know when you first met Mr. Meir [Azriel]?
>
> A: I believe it was that day. Maybe the day before.

(Bursztyn Dep. 7:2-16.) Bursztyn also was not aware of whether Azriel had a valid driver's license. (Bursztyn Dep. 8:20-25 ("Q: Prior to or at any time prior to renting the vehicle in 11/2007, did you have any discussions with Meir [Azriel] regarding whether he had a valid license? A: That would be up to Aris to determine if he qualified.").)

The moving defendants argue that Bursztyn did not have a reason to know that facilitating Azriel's rental of a vehicle would be unreasonably dangerous. The moving defendants point out that Bursztyn went to Aris's office with Azriel and informed Aris that Azriel would be driving the car. (Bursztyn Dep. 8:5-8:19.) At Aris, Azriel presented what he represented was a valid

12

Israeli driver's license to Franken, and Franken permitted the rental of a vehicle to Bursztyn and Azriel. Under the particular circumstances of this case, the Court cannot determine as a matter of law on summary judgment whether Bursztyn negligently entrusted this vehicle to an unsafe or unlicensed driver. At Aris, in the presence of Bursztyn, Azriel presented a temporary license that was written in Hebrew and lacked a photograph of its holder. There is a material issue of fact regarding whether, in light of the circumstances of this transaction—the fact that Bursztyn had just met Azriel that day, was unaware whether Azriel had a valid driver's license, and saw Azriel procure a temporary foreign license without a photograph on it—Bursztyn should have been reasonably concerned about entrusting Azriel with a vehicle and was negligent in doing so. Based on the information in the record, it cannot be determined on summary judgment as a matter of law whether Bursztyn knew, or should have known in the exercise of reasonable care, that permitting Azriel to drive the vehicle "represented an unreasonable risk of harm to that person or to others because of [Azriel's] incompetence to handle it safely." *See Good*, 564 N.Y.S.2d at 952. Viewing these facts in a light most favorable to the plaintiff and drawing all reasonable inferences therefrom, plaintiff has put forth sufficient evidence to survive summary judgment on this issue.

C. Negligence Claims Against Azriel

The moving defendants finally argue that all claims against Azriel should be dismissed because he was not negligent in operating the vehicle that eventually hit plaintiff. Instead, the moving defendants assert that the accident was proximately caused solely by the negligence of defendant Hernandez. In response, plaintiff and defendant Hernandez argue that Azriel was indeed negligent on November 4, 2007. In the alternative, plaintiff and defendant Hernandez argue that there is a disputed material issue of fact regarding whether Azriel was negligent. The Court concludes that there are disputed issues of material fact regarding whether Azriel was operating his vehicle negligently prior to the accident that preclude summary judgment on this issue.

Under New York law, a plaintiff must establish the following elements to prove negligence: (1) that a duty of care was owed by the defendant to the plaintiff; (2) that the defendant breached that duty; (3) that the defendant's breach was a proximate cause of the plaintiff's injuries; and (4) that plaintiff was damaged. *See Luina v. Katharine Gibbs Sch. N.Y., Inc.*, 830 N.Y.S.2d 263, 264 (App. Div. 2007); *Talbot v. N.Y. Inst. of Tech.*, 639 N.Y.S.2d 135, 136 (App. Div. 1996). In this action, all parties argue that particular duties of Azriel and Hernandez, as drivers operating vehicles on the roads of New York, arise from the New York Vehicle and Traffic Law.

Moving defendants argue that Hernandez negligently operated her vehicle on November 4, 2007. They contend that she "had the stop sign, and [Azriel] had the right of way through the intersection." (Moving Defs.' Mot. at 10.) Under the Vehicle and Traffic Law, a driver with the right of way is entitled to anticipate that another driver will comply with its obligation to yield at a stop sign. New York Vehicle & Traffic Law § 1142(a) provides that "every driver of a vehicle approaching a stop sign shall stop . . . , and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway . . . ." *Id.* A violation of Vehicle & Traffic Law § 1142 is negligence *per se*. *See Cenovski v. Lee*, 698 N.Y.S.2d 868, 868 (App. Div. 1999); *Weiser*

*v. Dalbo*, 585 N.Y.S.2d 124, 125 (App. Div. 1992). Thus, a violation of § 1142(a) creates a rebuttable presumption of negligence. *See Paljevic v. Smith*, 799 N.Y.S.2d 139, 140-41 (App. Div. 2005)*; Murchinson v. Incognoli*, 773 N.Y.S.2d 299, 299-300 (App. Div. 2004). To rebut this presumption, the opposing party needs to present evidence that the other driver was negligent. *See Alamo v. McDaniel*, 841 N.Y.S.2d 477, 479-80 (App. Div. 2007).

Plaintiff and defendant Hernandez argue that defendant Azriel was negligent because he accelerated his speed and moved his vehicle to the left of the road prior to impact with the vehicle driven by defendant Hernandez. Plaintiff has also submitted an affidavit from an accident reconstructionist, Robert Genna (Pl.'s Ex. A), stating that his expert opinion is that at the time of the impact, the Toyota driven by Azriel was traveling between 38 and 43 miles per hour on Middle Neck Road, where the posted speed is 30 miles per hour. (Genna Aff. ¶¶ 2, 14, 25.) The Toyota traveled 59 feet after contact with the Nissan and landed on plaintiff, a pedestrian walking on the sidewalk. (*Id.* ¶¶ 3, 24.) Genna asserts that if the operator of the Toyota had been traveling 30 miles per hour upon impact, the vehicle would have stopped before it reached the curb on the south side of Middle Neck Road, where it landed on plaintiff. (*Id.* ¶ 22.) Accordingly, plaintiff has put forward evidence that, when viewed in a light most favorable to plaintiff, suggests that Azriel was speeding at the time of the collision. This evidence creates a material issue of fact regarding negligence on the part of Azriel.

The Court reaches the same conclusion regarding whether an emergency situation justified any alleged speeding by Azriel. A driver confronted with emergency situation must respond in a reasonable manner. *Ferrer v. Harris*, 55 N.Y.2d 285, 292-93 (N.Y. 1923); *Viera v. Lexington Leasing Co.*, 22183/1999, 2005 WL 1712182, at *1-2 (N.Y. Sup. Ct. May 26, 2005). The reasonableness of a driver's actions is generally a question for the trier of fact; however, summary judgment is possible when the driver presents sufficient evidence to establish the reasonableness of his or her actions and there is no opposing evidentiary showing sufficient to raise a legitimate question of fact on the issue. *Smith v. Brennan*, 664 N.Y.S.2d 687, 689 (App. Div. 1997). Here, the material facts on this issue are in dispute.

Azriel admitted that, although he first tried to brake when he saw Hernandez's car stopped in the intersection of the road, he thereafter decided to accelerate to try to go around the vehicle. (Azriel Dep. 32:12-33:13.) Azriel claims that he sped up in response to an "emergency situation." Azriel contends that Hernandez created the emergency situation by stopping her car in the middle of the intersection. Hernandez insists that the emergency situation was created by Azriel speeding up instead of slowing down upon seeing her vehicle at the intersection. There thus remains a disputed material issue of fact regarding whether Azriel in fact created the "emergency situation" by speeding up to go around her vehicle or whether the emergency situation preexisted Azriel's actions. The Court further concludes that there remains a disputed material issue of fact regarding whether it would have been more reasonable for Azriel to stop or slow down in response to seeing Hernandez's car in the intersection. The Court is unable to determine the reasonableness of Azriel's actions at this stage as a matter of law; rather, it needs to be decided by a jury. *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) ("[S]ummary judgment is highly unusual in a negligence action where the assessment of

reasonableness generally is a factual question to be addressed by the jury."); *see also INA Aviation Corp. v. United States*, 468 F. Supp. 695, 699 (E.D.N.Y.) ("[N]egligence questions [as a general proposition] are properly resolved at trial because, upon a motion for summary judgment, a court may not try issues of fact; it may only determine whether there are factual issues to be tried."), *aff'd*, 610 F.2d 806 (2d Cir. 1979). It is also for the jury to determine, if both Hernandez and Azriel were negligent, whose negligence was the proximate cause of plaintiff's injury. *Tennant v. Peoria & P. U. Ry. Co.*, 321 U.S. 29, 32-33 (1944) (stressing that the determination of defendants' negligence and whether it proximately caused injury was a question of fact for the jury, and that "[n]o court is then justified in substituting its conclusions for those of the twelve jurors"); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 566 (1931) ("Whether the unlawful acts of respondents or conditions apart from them constituted the proximate cause of the depreciation in value was a question, upon the evidence in this record, for the jury, 'to be determined as a fact, in view of the circumstances of fact attending it.'" (quoting *Milwaukee Railway Co. v. Kellogg*, 94 U.S. 469, 474 (1876))). In sum, viewing all the evidence in a light most favorable to plaintiff and defendant Hernandez, there is sufficient evidence from which a reasonable jury could find that Azriel was operating his vehicle negligently prior to the collision. Thus, summary judgment in Azriel's favor on the negligence claim against him is denied.

### D. Motion to Strike

Plaintiff argues that moving defendants' answer must be stricken because the moving defendants have refused to cooperate with the discovery requests in this case and because of alleged misrepresentations to the Court regarding the whereabouts of defendant Azriel. "It is well established that courts have the inherent power to impose a variety of sanctions on both litigants and attorneys to regulate their docket, promote judicial efficiency, and deter frivolous filings." *Morris v. Adams-Millis Corp.*, 758 F.2d 1352, 1358 n.7 (10th Cir. 1985) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-67 (1980), *superseded on other grounds by statute*, Antitrust Procedural Improvements Act of 1980, Pub. L. No. 96-349, § 3, 94 Stat. 1154 (1980)) (additional citations omitted). However, the Court finds no basis for any sanctions in this case.

As discussed *supra* in footnote 1, plaintiff has not demonstrated to the Magistrate Judge who supervised discovery, or to this Court, that the moving defendants have failed to comply in good faith with their discovery obligations. No motion to compel has ever been made under Rule 37 of the Federal Rules of Civil Procedure by plaintiff for an alleged failure to comply with discovery. Moreover, with respect to alleged misrepresentations by moving defendants to the Court regarding the whereabouts of defendant Azriel, the Court finds no basis to conclude that any misrepresentations have been made. Based upon the record before the Court, it appears that counsel for the moving defendants, like plaintiff's counsel, has been attempting to locate and contact Azriel in good faith, but has been unsuccessful. In short, the Court concludes that plaintiff has failed to demonstrate any discovery violations by the moving defendants, nor has plaintiff shown that any willful misrepresentations have been made to the Court. Therefore, plaintiff's motion for sanctions, including striking the answer, is denied in its entirety.

## IV. Conclusion

For the foregoing reasons, moving defendants' motion for summary judgment is denied in its entirety. Plaintiff's motion to strike moving defendants' answer is also denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 11, 2010
Central Islip, New York

\* \* \*

The attorney for plaintiff is Christopher Joseph Cassar of Christopher J. Cassar P.C., 13 East Carver Street, Huntington, NY 11743. Defendants Aris, Inc., Michael Bursztyn, and Meir Azriel are represented by Adam Schwartzstein and Meredith Ellen Ross of Wilson, Elser, Moskowitz, Edelman Dicker, 150 East 42nd Street, New York, NY 10017-5639. Defendant Ana L. Hernandez is represented by Diane L. Devita of Morris Duffy Alonso & Faley, 2 Rector Street, New York, NY 10006.